IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EDA BROOKS,<br><br>                    Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC;<br>HSBC BANK USA, N.A., AS TRUSTEE<br>ON BEHALF OF ACE SECURITIES<br>CORP. HOME EQUITY LOAN TRUST,<br>SERIES 2006-HE3, ASSET-BACKED<br>PASS-THROUGH CERTIFICATES; and<br>MACKIE WOLF ZIENTZ & MANN, P.C.,<br><br>                    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-12-1410 |

## MEMORANDUM OPINION AND ORDER

Defendants Ocwen Loan Servicing, LLC ("Ocwen") and HSBC Bank USA, N.A. ("HSBC") removed this action from the 125th Judicial District Court of Harris County, Texas, where it was filed under Cause No. 2012-19290. Pending before the court is Plaintiff Eda Brooks' Motion to Remand Cause of Action Based on Lack of Subject Matter Jurisdiction ("Brooks' Motion to Remand") (Docket Entry No. 6). Also pending before the court is Defendants Ocwen Loan Servicing, LLC and HSBC Bank USA, N.A., as Trustee's Motion to Dismiss for Failure to State a Claim ("Defendants' Motion to Dismiss") (Docket Entry No. 5). For the reasons explained below, Brooks' Motion to Remand will be denied and the Defendants' Motion to Dismiss will be granted.

## I.  Factual and Procedural Background

### A.   Brooks' Factual Allegations

Eda Brooks brought this action in state court seeking a temporary restraining order, a temporary injunction preventing the defendants from foreclosing upon her home during the pendency of the case, damages for breach of contract, damages under the Texas Finance Code, and attorney's fees.[1]  Brooks' home was financed by a mortgage eventually sold to Ocwen and serviced by Ocwen.[2]  Brooks alleges that Ocwen participated in the Making Home Affordable Program ("MHA") and the Home Affordable Mortgage Program ("HAMP"), administered in accordance with guidelines set out in the Handbook for Servicers of Non-GSE Mortgages ("the Handbook").[3]  Brooks alleges that as a result of medical problems, she experienced financial difficulties and pursued a mortgage modification with Ocwen, eventually receiving a HAMP modification.[4]  Brooks alleges that she then experienced further financial difficulties and filed for bankruptcy.[5]  Brooks alleges that after applying for another

---

[1]Plaintiff's Original Petition, Application for Temporary Restraining Order, and Application for Temporary Injunction ("Original Petition"), Exhibit A-2 to Notice of Removal of Civil Action, Docket Entry No. 1-4, p. 18.

[2]Id. at 4 ¶ 9.

[3]Id. at 6-9 ¶¶ 14-18.

[4]Id. at 4 ¶¶ 10-11.

[5]Id. at 4 ¶ 11.  Brooks alleges that Ocwen was originally a creditor in her bankruptcy, but that "upon relying on a promise from OCWEN to 'work with her' to achieve a manageable mortgage payment, she dismissed them as a creditor on her bankruptcy." Id.

modification with Ocwen, she was sent a notice of foreclosure and a letter of final denial of her modification.[6]  Brooks alleges that "on limited notice, OCWEN and MWZ moved forward with the acceleration and foreclosure of Plaintiff's home.  Plaintiff's homestead is reposted for foreclosure sale on April 3, 2012."[7]

**B.   Brooks' Causes of Action**

Brooks alleges claims for breach of contract and violations of the Texas Finance Code, and alleges the defenses of waiver and quasi-estoppel to acceleration of her debt and sale of her home.[8]

1.   Breach of Contract

Brooks alleges that the Deed of Trust required Ocwen "to give (1) notice of default, (2) specific actions Borrowers can take to cure the default and (3) Borrowers at least 30 days to complete those actions."[9]  Brooks alleges that Ocwen breached the Deed of Trust when it (1) "failed to give Ms. Brooks the opportunity to pursue the range of foreclosure alternatives, such as a short-sale or deed-in-lieu of foreclosure," and (2) "provid[ed] Ms. Brooks with a specific action to cure the default (relief under HAMP or

---

[6]Id. at 5 ¶ 12.

[7]Id. at 10 ¶ 23.

[8]Id. at 11-15.

[9]Id. at 11 ¶ 25.

HAFA), and then fail[ed] to allow them the opportunity to utilize that default-curing option prior to foreclosing on her home."[10]

### 2.   Texas Finance Code

Brooks alleges that Ocwen and Mackie Wolf violated Texas Finance Code § 392.301(a)(8), which prohibits debt collectors from "threatening to take an action prohibited by law."

> As a participating servicer in the HAMP program, OCWEN violated Subsection (a)(8) when it threatened to take action to foreclose on the property without properly considering Ms. Brooks under the HAFA alternative. Moreover, [Mackie Wolf] violated the Act when it too threatened to move forward with the foreclosure and removal of Ms. Brooks from her home *knowing that it legally could not do so* until OCWEN had certified that all non-foreclosure options had been exhausted per the requirements under the *Handbook*.[11]

Brooks further alleges that until a written certification that "all loss mitigation options ha[d] been considered and exhausted" "neither OCWEN nor [Mackie Wolf] should have threatened foreclosure or moved forward with foreclosure action."[12]

Brooks also alleges that Ocwen and Mackie Wolf violated Texas Finance Code §§ 392.304(a)(8) and 392.304(a)(19), which respectively prohibit debt collectors from misrepresenting a consumer's debt and from using any false representations or deceptive means to collect a debt.[13]

---

[10] *Id.* at 11 ¶¶ 26-27.

[11] *Id.* at 12-13 ¶ 31.

[12] *Id.* at 13 ¶ 32.

[13] *Id.* at 13 ¶ 33.

Both [Mackie Wolf] and OCWEN included charges on reinstatement quotes for "attorney's fees" and "trustee's fees" that could not have been incurred because the foreclosure had not taken place yet. In so doing, both Defendants misrepresented the character and extent of the debt as well as made false representations to collect it.[14]

3.   <u>Defenses to Acceleration and Sale</u>

Brooks alleges that the Deed of Trust "provides that the borrowers may bring an action in court to assert any defense to acceleration and sale."[15] In alleging the defenses of waiver and quasi-estoppel, "Ms. Brooks pleads as though she were a defendant to OCWEN's charge that a default and therefore, a breach of contract of the Ms. Brooks existed."[16] Brooks alleges that Ocwen "waived its right to proceed with foreclosure until it properly considered Ms. Brooks for each of the available foreclosure prevention and alternative options" when it "offered to consider Ms. Brooks' eligibility for a loan modification."[17] As to quasi-estoppel, Brooks alleges that Ocwen chose to participate in the foreclosure mitigation and avoidance programs, but "then decided to ignore the *Handbook* when it failed to consider Ms. Brooks requests for all available foreclosure relief options."[18] Brooks further

---

[14] <u>Id.</u>

[15] <u>Id.</u> at 14 ¶ 34.

[16] <u>Id.</u>

[17] <u>Id.</u> at 14 ¶ 36.

[18] <u>Id.</u> at 14-15 ¶¶ 37-38.

alleges that "it would be unconscionable to permit OCWEN to maintain this position to the disadvantage of Ms. Brooks."[19]

## C. Defendants' Removal

Ocwen and HSBC removed this case to federal court based on federal diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441.[20] Brooks is a citizen of Texas.[21] Ocwen and HSBC allege, and Brooks does not dispute, that Ocwen is a citizen of Florida[22] and that HSBC is a citizen of Virginia.[23] Mackie Wolf is a citizen of Texas.[24]

## II. Brooks' Motion to Remand

Brooks filed a Motion to Remand.[25] Ocwen and HSBC replied.[26] Ocwen and HSBC argue that because Brooks has failed to state a plausible claim against Mackie Wolf, Mackie Wolf is improperly

---

[19]Id. at 15 ¶ 39.

[20]Notice of Removal of Civil Action, Docket Entry No. 1, p. 3.

[21]Original Petition, Exhibit A-2 to Notice of Removal of Civil Action, Docket Entry No. 1-4, p. 1 ¶ 2; Notice of Removal of Civil Action, Docket Entry No. 1, p. 3.

[22]Defendants Ocwen Loan Servicing, LLC and HSBC Bank, USA, N.A., as Trustee's Response in Opposition to Plaintiff's Motion to Remand ("Defendants' Response to Motion to Remand"), Docket Entry No. 9, p. 2.

[23]Notice of Removal of Civil Action, Docket Entry No. 1, p. 3.

[24]Original Petition, Exhibit A-2 to Notice of Removal of Civil Action, Docket Entry No. 1-4, p. 2 ¶ 5.

[25]Docket Entry No. 6.

[26]Defendants' Response to Motion to Remand, Docket Entry No. 9.

joined and therefore should not be considered in the determination of whether there is complete diversity.[27]

## A.   Standard of Review

### 1.   Removal Standard

A defendant has the right to remove a case to federal court when federal jurisdiction exists and the removal procedure is properly followed.  See Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441). Federal courts have original jurisdiction over civil actions where the parties are diverse and the matter in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  If jurisdiction is based on diversity an action "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which [the] action is brought."  28 U.S.C. § 1441(b)(2).

The removing party bears the burden of establishing that a state-court suit is properly removable to federal court.  Gasch v. Hartford Acc. & Indem. Co., 491 F.3d 278, 281 (5th Cir. 2007). Federal courts generally make decisions about subject-matter jurisdiction after removal by evaluating the plaintiff's allegations as they existed when the defendant removed the action. Kidd v. Southwest Airlines, Co., 891 F.2d 540, 546 (5th Cir. 1990).

---

[27]Notice of Removal of Civil Action, Docket Entry No. 1, pp. 4-5.

Doubts about the propriety of removal are to be resolved in favor of remand. <u>Manguno</u>, 276 F.3d at 723.

     2.  <u>Improper-Joinder Standard</u>

A case may be removed despite the presence of a resident defendant if the removing defendant shows that the resident defendant was fraudulently or improperly joined. <u>Salazar v. Allstate Texas Lloyd's, Inc.</u>, 455 F.3d 571, 574 (5th Cir. 2006). A removing party attempting to prove improper joinder carries a heavy burden. <u>Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.</u>, 313 F.3d 305, 312 (5th Cir. 2002). To establish that a nondiverse defendant has been improperly joined to defeat diversity jurisdiction the removing party must prove either (1) actual fraud in the pleading of jurisdictional facts or (2) inability of the plaintiff to establish a cause of action against the nondiverse party in state court. <u>Gasch</u>, 491 F.3d at 281 (citing <u>Smallwood v. Ill. Cent. R.R. Co.</u>, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)). Only the second test for improper joinder is raised by Brooks' Motion to Remand. "[T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." <u>Smallwood</u>, 385 F.3d at 573.

-8-

The standard for evaluating a claim of improper joinder is similar to that used in evaluating a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Campbell v. Stone Ins., Inc., 509 F.3d 665, 669 (5th Cir. 2007). "The scope of the inquiry for improper joinder, however, is broader than that for Rule 12(b)(6) because the court may 'pierce the pleadings' and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim." Id. "[A] summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state [or nondiverse] defendant." Smallwood, 385 F.3d at 574. "[T]he focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." Id. at 573. "When the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone, the requisite showing has not been made." Id. at 575. Furthermore, in deciding whether a party was improperly joined all contested factual issues and ambiguities of state law are resolved in favor of the plaintiff. Gasch, 491 F.3d at 281.

**B.   Analysis**

Brooks argues that she has stated plausible claims under the Texas Finance Code against Mackie Wolf and that complete diversity

is therefore destroyed.[28]   Ocwen and HSBC argue that Brooks has
failed to state a claim under Texas Finance Code § 392.301(a)(8)
because the Handbook guidelines are not law and, therefore, it is
not possible for a debt collector "to take an action prohibited by
law" by violating the guidelines.[29]   Ocwen and HSBC argue that
Brooks' claims under Texas Finance Code §§ 392.304(a)(8) and
392.304(a)(19) should be dismissed because "Plaintiff's speculation
that Mackie Wolf violated Section 392.304(a)(8) simply because the
attorney's fees and trustee's fees were included on the rein-
statement quote before the foreclosure occurred is entirely
speculative."[30]

The court concludes that there is no reasonable basis to
predict that Brooks might be able to recover against Mackie Wolf
under § 392.301(a)(8).   Brooks provides no support in either her
Original Petition or in her Motion to Remand for the proposition
that the guidelines in the Handbook are law, such that a violation
of the guidelines would be actionable under § 392.301(a)(8).   See
Burr, 2012 WL 1059043, at *7 ("However, the [plaintiffs] do not
allege facts establishing that HAMP and HAFA are anything more than
mere guidelines; nor do they allege that the programs prohibit or
create perquisites to foreclosure.").   Brooks does not cite, and

---

[28]Brooks' Motion to Remand, Docket Entry No. 6, pp. 7-9.

[29]Defendants' Response to Motion to Remand, Docket Entry No. 9,
pp. 5-6 (citing Burr v. JPMorgan Chase Bank, N.A., 2012 WL 1059043,
at *7 (S.D. Tex. March 28, 2012)).

[30]Id. at 9.

the court has not found, any authority for the proposition that a violation of the guidelines is a violation of law.  Moreover, none of the cases that Brooks hightlights[31] relies upon an actual finding that the guidelines are law.

The court also concludes that there is no reasonable basis to predict that Brooks might be able to recover against Mackie Wolf on her claim for violation of Texas Finance Code §§ 392.304(a)(8) and 392.304 (a)(19).  Ocwen and HSBC argue that Brooks' claim is purely speculative:

> Plaintiff second claim against Mackie Wolf is that Mackie Wolf violated Section 392.304(a)(8) because it "included charges on reinstatement quotes for 'attorney's fees' and 'trustee's fees' that *could not have been* incurred because the foreclosure had not taken place yet." Plaintiff does not plead that the reinstatement quote included false charges -- only that *it is possible* the charges "could not have been incurred."[32]

Brooks alleges in her Original Petition that the reinstatement notice contained charges that "could not have been incurred because the foreclosure had not taken place yet."[33]  The court concludes that this allegation can be fairly read to mean that at least some of the charges on the reinstatement notice could not have been incurred yet.  Brooks does not allege that under the Deed of Trust

---

[31]Brooks' Motion to Remand, Docket Entry No. 6, p. 9.

[32]Defendants' Response to Motion to Remand, Docket Entry No. 9, p. 8 (internal citations omitted).

[33]Original Petition, Exhibit A-2 to Notice of Removal of Civil Action, Docket Entry No. 1-4, p. 13 ¶ 33.

no attorney's fees and trustee fees could lawfully be incurred prior to foreclosure. The court concludes that Brooks' allegations do not provide a reasonable basis for the court to predict that the plaintiff might be able to recover against Mackie Wolf under §§ 392.304(a)(8) and 392.304(a)(19).

## C.   Conclusion

For the reasons stated above, the court concludes that Brooks' causes of action against Mackie Wolf are insufficient to withstand an improper-joinder analysis and that the court therefore has subject matter jurisdiction under 28 U.S.C. §§ 1332 and 1441. Accordingly, Brooks' Motion to Remand will be denied.[34]

## III.   Defendants' Motion to Dismiss

Ocwen and HSBC filed a motion asking the court to dismiss this action under Federal Rule of Civil Procedure 12(b)(6)[35] and Brooks responded.[36] For the reasons stated below, the court will grant Defendants' Motion to Dismiss.

---

[34]Mackie Wolf has filed Defendant Mackie Wolf Zientz & Mann, P.C.'s Motion for Leave to File a Response in Opposition to Plaintiff's Motion to Remand (Docket Entry No. 12). Because the court will deny Brooks' Motion to Remand, Mackie Wolf's motion will be denied as moot.

[35]Defendants' Motion to Dismiss, Docket Entry No. 5.

[36]Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, and in the Alternative Plaintiff's Motion for Leave to File Amended Complaint ("Brooks' Response to Defendants' Motion to Dismiss"), Docket Entry No. 8.

## A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief may be granted.  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).  The claimant's "obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Id.</u> at 1964-65 (internal quotation marks omitted).  The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  <u>Id.</u> at 1965.

In considering a Rule 12(b)(6) motion, a court must limit itself to the contents of the pleadings, including attachments, with two exceptions.  In <u>Collins v. Morgan Stanley Dean Witter</u>, 224 F.3d 496 (5th Cir. 2000), the Fifth Circuit approved the district court's consideration of certain documents the defendant attached not to the pleadings, but to its motion to dismiss.  <u>Id.</u> at 498-99. The Fifth Circuit has "restricted such consideration to documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim."  <u>Scanlan v. Tex. A&M Univ.</u>, 343 F.3d 533, 536 (5th Cir. 2003).  Courts also may refer to matters of public record when deciding a Rule 12(b)(6) motion.  <u>Norris v. Hearst Trust</u>, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

-13-

**B.   Analysis**

1.   <u>Breach of Contract Claim</u>

Ocwen and HSBC argue that Brooks has not pleaded facts that
would constitute a breach of the Deed of Trust.

> Plaintiff does not dispute that Defendants provided her
> "with a specific action to cure the default."  Rather,
> she alleges that Defendants failed to provide her "the
> range of foreclosure alternatives." However, the Deed of
> Trust requires only that Defendants provide Plaintiff
> notice of "<u>the</u> action to cure the default."  Plaintiff
> may not impose requirements on Defendants not provided
> for in the plain language of the Deed of Trust.
> Plaintiff has alleged no facts to support her claim that
> Defendants failed to comply with the terms of the Deed of
> Trust, and such claim should be dismissed.[37]

Brooks disputes Ocwen and HSBC's contention that there was no
breach.

> The Plaintiff goes on to allege that the security
> instrument requires Ocwen to give her time to implement
> such default-curing options of not less than 30 days.
> Finally, plaintiff alleges that, although Ocwen gave her
> the HAMP as a default-curing option pursuant to the terms
> of the Deed of Trust, it failed to allow her to pursue
> that avenue prior to acceleration and foreclosure.  In
> failing to allow time to complete the "actions" to cure
> the default and proceeding with acceleration and
> foreclosure, Ocwen breached the terms of the security
> instrument.[38]

The relevant provision of the Deed of Trust states:

> 22.  Acceleration; Remedies.  Lender shall give notice to
> Borrower prior to acceleration following Borrower's
> breach of any covenant or agreement in this Security

---

[37]Defendants' Motion to Dismiss, Docket Entry No. 5, p. 6
(internal citations omitted).

[38]Brooks' Response to Defendants' Motion to Dismiss, Docket
Entry No. 8, p. 6 (internal citations omitted).

Instrument . . . . The notice shall specify:   (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property.   The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.   If default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument.[39]

Brooks makes the following allegations in support of her claim that Ocwen breached the Deed of Trust:

26.   To date OCWEN has failed to give Ms. Brooks the opportunity to pursue the range of foreclosure alternatives, such as a short-sale or deed-in-lieu of foreclosure.

27.   In providing Ms. Brooks with a specific action to cure the default (relief under HAMP or HAFA), and then failing to allow them the opportunity to utilize that default-curing option prior to foreclosing on her home, OCWEN breached the Security Instrument, and Ms. Brooks is entitled to relief for breach of contract.[40]

Brooks' breach of contract claim is premised on her allegations that Ocwen breached the Deed of Trust because (1) Ocwen failed to allow Brooks adequate time to cure the default using the method of curing the default that Ocwen included in the notice, and (2) Ocwen

---

[39]Deed of Trust, Exhibit A to Defendants' Motion to Dismiss, Docket Entry No. 5-1, p. 13 (referred to in Original Petition, Exhibit A-2 to Notice of Removal of Civil Action, Docket Entry No. 1-4, p. 11 ¶ 24).

[40]Original Petition, Exhibit A-2 to Notice of Removal of Civil Action, Docket Entry No. 1-4, p. 11 ¶¶ 26-27.

-15-

failed to give Brooks the "opportunity to pursue the range of foreclosure alternatives." However, Paragraph 22 of the Deed of Trust sets out (1) the amount of time that Ocwen was required to provide Brooks to cure the default (30 days), and (2) the opportunity to cure that Ocwen was required to provide to Brooks (identify an action required to cure the default and give 30 days before foreclosing). The Deed of Trust does not require that Ocwen provide opportunity for Brooks to "pursue the range of foreclosure alternatives." In setting out the 30-day cure-period, the Deed of Trust defines the "opportunity to utilize the default-curing option" included in the notice as 30 days. Brooks does not allege that Ocwen moved forward with acceleration and foreclosure in less than 30 days. The court therefore concludes that Brooks has failed to allege facts that, if true, could constitute a breach of the Deed of Trust, and this claim will therefore be dismissed.

    2.   Texas Finance Code Claims

    The court concluded above that Brooks' claims under the Texas Finance Code against Mackie Wolf should be dismissed.[41] Brooks alleges those same claims against HSBC as well, and the same analysis therefore applies. Brooks has failed to state a claim against HSBC under Texas Finance Code § 392.301(a)(8) because there is no basis for the proposition that a violation of the guidelines in the Handbook is a violation of law. Brooks has failed to state

_____

[41]See supra, Part II.B.

-16-

a claim against HSBC under Texas Finance Code §§ 392.304(a)(8) and 392.304 (a)(19) because Brooks' allegations of possibly improper charges fails to allege that the lender was precluded by the Deed of Trust from recovering such expenses.

### 3.   Defenses to Acceleration and Sale

Brooks alleges two defenses to acceleration and sale, waiver and quasi-estoppel, which Brooks pleads "as though she were a defendant to OCWEN's charge that a default . . . existed."[42]  Ocwen has not brought suit in court alleging a claim for relief.  Because Brooks' waiver and quasi-estoppel allegations are defenses to claims that Ocwen has not pleaded, they are not properly before the court and will therefore be dismissed.

### C.   Conclusion

For the reasons stated above, the court concludes that Brooks has failed to state a claim for breach of contract, for violation of the Texas Finance Code, or for relief under the doctrines of waiver or quasi-estoppel.  The court will therefore dismiss Brooks' claims under Federal Rule of Civil Procedure 12(b)(6).[43]

---

[42]Original Petition, Exhibit A-2 to Notice of Removal of Civil Action, Docket Entry No. 1-4, p. 14 ¶ 34.

[43]Brooks asks the court to allow her leave to file an amended complaint.  Brooks' Response to Defendants' Motion to Dismiss, Docket Entry No. 8, p. 2.  Brooks provides no argument that an opportunity to replead might enable her to avoid dismissal under Rule 12(b)(6).  The court therefore **DENIES** this request.

## IV.   Order

For the reasons stated above, Plaintiff Eda Brooks' Motion to Remand Cause of Action Based on Lack of Subject Matter Jurisdiction (Docket Entry No. 6) is **DENIED,** and Defendants Ocwen Loan Servicing, LLC and HSBC Bank USA, N.A., as Trustee's Motion to Dismiss for Failure to State a Claim (Docket Entry No. 5) is **GRANTED.**   Defendant Mackie Wolf Zientz & Mann, P.C.'s Motion for Leave to File a Response in Opposition to Plaintiff's Motion to Remand (Docket Entry No. 12) is **DENIED as moot.**

**SIGNED** at Houston, Texas, on this the 27th day of July, 2012.

_____

SIM LAKE
UNITED STATES DISTRICT JUDGE